

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

July 14, 2026

**BY ECF**
The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

> **Re: *United States v. Richard Kim*, 25 Cr. 359 (LGS)**

Dear Judge Schofield:

The Government writes to respectfully request that the Court order a mental examination of defendant Richard Kim pursuant to Rule 12.2(c)(1)(B) of the Federal Rules of Criminal Procedure. In advance of an examination, the Court should further order the defendant to produce material relating to his anticipated mental defect defense to which the Government is entitled pursuant to Rule 16 (b)(1)(A)–(C) and to meaningfully amend his Rule 16 expert disclosure.

## I.  Background

On May 4, 2026, defense counsel provided untimely notice to the Government pursuant to Rule 12.2(b) that defendant Richard Kim intended to "introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on . . . the issue of guilt." Fed. R. Crim. P. 12.2(b). Such notice was required, pursuant to Rule 12.2, no later than the date for pretrial motions, set by the Court for March 19, 2026. On that date, the defendant indicated to the Court that he did "not intend to file any Rule 12 motions." (Dkt. 29). A second notice, provided to the Government more than six weeks later, changed course, indicating that "the defense intends to introduce expert testimony on the issue of Mr. Kim's gambling disorder." (Dkt. 34).

On May 18, 2026, the Government moved to exclude the defendant's proposed evidence because the defendant failed to satisfy Rule 12.2's notice provision without providing any "good cause" justification; the proffered mental defect plainly subverts the Insanity Defense Reform Act; the proffered evidence is inadmissible under Federal Rules of Evidence 401 and 403; and the proffered expert testimony would supplant the jury's role as the sole factfinder regarding the defendant's mental state. (Dkt. 39). The Government further moved to exclude the testimony of the defendant's proposed expert, Dr. John Mariani, pursuant to Rules 702, 703, and 704. (Dkt. 44). In opposition, and in the face of an overwhelming consensus of Courts of Appeal across the country and district courts in this Circuit which have precluded evidence of the kind the defendant proposes, (*see* Dkt. 39 at 22–25), the defendant has cited to only a single, out-of-Circuit, forty-

year-old, and inapposite decision from the District of New Jersey to support the maneuver he proposes. (Dkt. 42 at 12). The defendant's subsequent two-and-a-half-page Rule 16 expert disclosure described the bases for Dr. Mariani's opinions in a single sentence. (Dkt. 44 at Ex. A).

Despite expressly conceding in his motions *in limine*—while urging the Court to overlook his untimely Rule 12.2 notice—that he would not object to an adjournment of trial in order for a Government rebuttal expert to conduct a mental examination, (Dkt. 42 at 9), the defendant now refuses to consent to such an examination. In response to inquiries by the Government, defense counsel have declined to provide any legal authority for that refusal, explaining only that Rule 12.2 does not provide for an examination as a matter of right.

As noted in the Government's pending *Daubert* motion, the defendant has, to date, provided no discovery related to the defendant's mental defect claim. (Dkt. 44 at 2–3).

## II.  Applicable Law

Rule 12.2 creates a notice rule where a defendant "intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on . . . the issue of guilt." Fed. R. Crim. P. 12.2(b). The rule requires the defendant to "notify an attorney for the government in writing of this intention and file a copy of the notice with the clerk" no later than "the time provided for filing a pretrial motion or at any later time the court sets." *Id.* A court in its discretion may permit the late filing of a notice "for good cause" in order to "grant the parties additional trial-preparation time." *Id.* The notes of the Advisory Committee explain that the rule's "objective is to give the government time to prepare to meet the issue, which will usually require reliance upon expert testimony." Fed. R. Crim. P. 12, 1974 advisory committee notes. Advance notice avoids "unnecessarily delaying the administration of justice" by preventing a "continuance in the middle of a trial" in order to conduct an adversarial examination. *Id.*

"Rule 12.2 implicitly recognizes that fairness *virtually requires* that the government have an opportunity to have the defendant examined by appropriate experts." *United States v. Harding*, 219 F.R.D. 62, 63 (S.D.N.Y. 2003) (LAK) (emphasis added). "[O]rdinarily the only effective rebuttal of psychiatric opinion testimony is contradictory opinion testimony." *United States v. McSherry*, 226 F.3d 153, 157 (2d Cir. 2000) (quoting *United States v. Byers,* 740 F.2d 1104, 1114 (D.C. Cir. 1984) (*en banc*)); *see also United States v. Buchbinder*, 796 F.2d 910, 915 (7th Cir. 1986) ("One of the reasons that Congress enacted Rule 12.2(b) was to enable the government to prepare for cross-examination of the defendant's expert witnesses and to present any rebuttal witnesses to counter the defense expert's testimony."). The Supreme Court has explained, moreover, that such rebuttal evidence does not violate a defendant's Fifth Amendment rights. *Kansas v. Cheever*, 571 U.S. 87, 98 (2013) ("where a defense expert who has examined the defendant testifies that the defendant lacked the requisite mental state to commit a crime, the prosecution may offer evidence from a court-ordered psychological examination for the limited purpose of rebutting the defendant's evidence"); *accord Powell v. Texas*, 492 U.S. 680, 683–84 (1989). Rule 12.2 limits the Government's use of a defendant's statements at trial until after the defendant has introduced evidence of their mental condition. *See* Fed. R. Crim. P. 12.2(c)(4).

Rule 16 requires that a defendant "must permit the government, upon request, to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items if (i) the item is within the defendant's possession, custody, or control; and (ii) the defendant intends to use the item in the defendant's case-in-chief at trial." Fed. R. Crim. P. 16(b)(1)(A). The Rule also requires that a defendant "must permit the government, upon request, to inspect and to copy or photograph the results or reports of any physical or mental examination and of any scientific test or experiment if (i) the item is within the defendant's possession, custody, or control; and (ii) the defendant intends to use the item in the defendant's case-in-chief at trial, or intends to call the witness who prepared the report and the report relates to the witness's testimony." Fed. R. Crim. P. 16(b)(1)(B).

Further, Rule 16 requires that a defendant "must disclose to the government, in writing, [required information] for any testimony that the defendant intends to use under Federal Rule of Evidence 702, 703, or 705 during the defendant's case-in-chief at trial, if . . . the defendant has given notice under Rule 12.2(b) of an intent to present expert testimony on the defendant's mental condition." Fed. R. Crim. P. 16(b)(1)(C). The disclosure must contain "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief; the bases and reasons for them; the witness's qualifications, including a list of all publications authored in the previous 10 years; and a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition." *Id.* Such disclosure must be made "sufficiently before trial to provide a fair opportunity for the government to meet the defendant's evidence." *Id.*

## III.  Discussion

1.  <u>The Court Should Order a Mental Examination of the Defendant</u>

The Court should order a mental examination of the defendant pursuant to its inherent authority and Rule 12.2(c)(1). As the Supreme Court has explained, the government's ability to examine the defendant and to present its own expert rebuttal testimony is "the only effective means of challenging [Rule 12.2(b) expert testimony]." *Cheever*, 571 U.S. at 94. Although the text of Rule 12.2(c)(1)(B) provides for a discretionary examination when a defendant intends to introduce evidence related to a mental disease or defect—whereas such an examination is mandatory in the case of claimed insanity—the Supreme Court has recognized that excluding rebuttal evidence related to mental defect would undermine "the core truth-seeking function of the trial."[1] *Id.* at 95. Without such evidence, the Court held, "an inference would arise that the evidence presented by the [defendant] as to his mental condition is true because [it is] uncontradicted." *Id.* "Any other rule," the Court explained, "would undermine the adversarial process, allowing a defendant to provide the jury, through an expert operating as proxy, with a one-sided and potentially inaccurate view of his mental state at the time of the alleged crime." *Id.* at 94. Accordingly, courts construing Rule 12.2(c)(1)(B) have had little difficulty in granting Government motions for such examinations. *See, e.g.*, *United States v. Russell*, No. 3:22 Cr. 58 (DJH), 2023 WL 1997129, at *2 (W.D. Ky. Feb. 14, 2023) (examination on consent); *United States v. Thompson*, No. 19 Cr. 159

---

[1] The Supreme Court expressly rejected the suggestion that the Government should be made to rebut defense evidence through means other than a direct examination of the defendant. *Id.* at n.2.

(RSL), 2022 WL 834024, at *1 (W.D. Wash. Mar. 21, 2022) (same); *United States v. Holmes*, No. 18 Cr. 00258 (EJD), 2020 WL 5414786, at *3 (N.D. Cal. Sept. 9, 2020) (examination over the defendant's objection); *United States v. Lewis*, 53 F.3d 29, 35 n.9 (4th Cir. 1995).

Consistent with other courts' orders for similar examinations, the Government proposes that the defendant's examination be conducted outside the presence of defense or Government counsel and be video-recorded.[2] *See Hollis v. Smith*, 571 F.2d 685, 692 (2d Cir. 1978) ("It is difficult to imagine anything more stultifying to a psychiatrist, as dependent as he is upon the cooperation of his patient, than the presence of a lawyer objecting to the psychiatrist's questions and advising his client not to answer this question and that."); *United States v. Wilson*, 920 F. Supp. 2d 287, 305 (E.D.N.Y. 2012) ("the Sixth Amendment does not require that a defendant be permitted to have counsel present at a mental examination conducted to rebut a psychiatric defense he has initiated"). As recently explained by United States District Judge Edward J. Davila, recording and transcribing an examination reduces "the burden of notetaking by the examiner while ensuring an accurate record of questions and answers"; "provides the defense with the tools necessary to act if a government evaluation intrudes upon [the defendant's] rights"; creates " a comprehensive and accurate record [that] would greatly aid the Court's determinations" in later admissibility disputes; and is recommended by the American Bar Association's Criminal Justice Standards on Mental Health. *Holmes,* 2020 WL 5414786, at *4.

The Government proposes that the Court permit the Government's designated expert(s) to examine the defendant during video-recorded, in-person interviews of up to 16 hours, or the length of Dr. Mariani's evaluation(s) of the defendant, whichever is longer.[3] The parties agree that the evaluation may occur at the office of the Government's expert, or at an otherwise neutral location in the New York City area, and jointly propose the following deadlines:

- The Government's evaluation shall be completed no later than November 1, 2026.

- Any Rule 16 rebuttal expert notice related to the Government's evaluation should be disclosed to the defendant by December 11, 2026.

- Any defense *Daubert* motion shall be filed by January 15, 2027, with the Government's opposition by January 29, 2027.

---

[2] The Government understands that defense counsel oppose both proposals.

[3] In response to an inquiry by the Government, defense counsel declined to detail the nature or length of Dr. Mariani's evaluation(s) beyond what is provided in the defendant's expert disclosure. (*See* Dkt. 44 at Ex. A). As part of the discovery material described below, the Court should also order the defendant to provide records sufficient to detail the nature of any particular diagnostic tools or tests performed on the defendant, and the length of time Dr. Mariani has spent evaluating the defendant, so that the Government's expert(s) may perform equivalent examinations. The Government may seek leave for supplemental evaluation upon any future disclosures by the defendant that post-date the Government's examination of the defendant.

2. <u>The Court Should Order the Defendant to Disclose Materials Necessary to Conduct the Examination</u>

Because the effectiveness of any such examination rests on the defendant's compliance with his discovery obligations, the Court should order him to immediately produce the Rule 16 material he has withheld. Specifically, the Court should order the defendant to produce (i) records of Dr. Mariani's interviews with the defendant; (ii) the defendant's complete treatment records from the Columbia University Gambling Disorder Clinic; (iii) records reviewed by Dr. Mariani which were produced by the Government in discovery; (iv) records of any other physical or mental examination of the defendant in the defendant's possession, custody, or control; and (v) records related to the results of the defendant's prior evaluation by Rachelle Williams, a licensed clinical social worker employed by the Federal Defenders of New York, who previously performed the South Oaks Gambling Screen and the NORC Diagnostic Screen for Gambling Problems with the defendant.[4]

The Government is entitled to such records pursuant to Rule 16(b)(1)(B), which provides that "results or reports of any physical or mental examination" must be disclosed,[5] as well as Rule 16(b)(1)(A), which provides for reciprocal disclosure of all documents and objects. Such obligations are triggered immediately upon the Government's request so long as the material is "within the defendant's possession, custody, or control" and "the defendant intends to use the item in the defendant's case-in-chief at trial" (Rule 16(b)(1)(A)) "or intends to call the witness who prepared [a] report and the report relates to the witness's testimony" (Rule 16(b)(1)(B)). Here, there can be little doubt that the defendant intends to introduce such material, and there is no doubt

---

[4] None of these records are protected by doctor-patient or psychotherapist-patient privilege where the defendant himself puts his mental health at issue. *See, e.g.*, *Ottawa Off. Integration Inc. v. FTF Bus. Sys., Inc.*, 132 F. Supp. 2d 215, 220 (S.D.N.Y. 2001) ("It is well settled that a party waives his doctor-patient privilege when he puts his medical condition into issue."); *John Doe Co. v. United States*, 350 F.3d 299, 303 (2d Cir. 2003) (a party may not simultaneously "advance[e] a claim to a court or jury . . . while relying on its privilege to withhold from a litigation adversary materials that the adversary might need to effectively contest or impeach the claim"); *In re Grand Jury Proc.*, 219 F.3d 175, 182 (2d Cir. 2000) ("a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party").

[5] Although Rule 16 describes the defendant's obligation as being triggered by the defendant's specific request for disclosure "under Rule 16(a)(1)(F)," the Court's August 13, 2025 and August 20, 2025 discovery orders, (Dkts. 15, 17), obviated any such request by ordering the Government to produce *all* Rule 16 discovery, an order that preempted the party-led exchange of discovery to which the text of the rule has been traditionally addressed. Just as the Court's discovery order requires the Government to produce a defendant's oral statements, written statements, recorded statements, prior record, and documents or objects material to preparing a defense, pursuant to Fed. R. Crim. P. 16(a)(1)(A), (B), (C), (D), and (E) even in the absence of a defendant's express request, the Court should equally construe Rule 16(b)(1)(B) as having been triggered by the Government's equal obligation to produce discovery material pursuant to Fed. R. Crim. P. 16(a)(1)(F).

at all that the defendant intends to call at least one witness who prepared reports of the defendant's medical examinations, *i.e.*, Dr. Mariani, and that such reports would relate to Dr. Mariani's testimony. The defendant has noticed Dr. Mariani as an expert witness at trial, (Dkt. 44 at Ex. A); has argued for the admissibility of not only Dr. Mariani's conclusions but also hearsay evidence upon which they are based, (Dkt. 42 at 14; Dkt. 51 at 2–3); has characterized Dr. Mariani's testimony as "one of the few pieces of evidence that Mr. Kim can present to undercut the government's theory of prosecution," (*id.* at 13); and has indicated to the Government that trial may only be scheduled on dates Dr. Mariani is available to testify. That the defendant has no burden of proof, or may ultimately elect to not present any defense case at all, cannot absolve the defendant of his Rule 16 obligations. If it could, no reciprocal discovery would ever be made, and "[a]llowing [a] defendant to defer the provision of [] discovery until a final determination regarding whether or not to put an expert witness on the stand would . . . frustrate" the reciprocal discovery rule. *United States v. Jasper*, No. 00 Cr. 825 (PKL), 2003 WL 223212, at *4 (S.D.N.Y. Jan. 31, 2003). As the Advisory Committee notes make clear, "[i]n cases where both prosecution and defense have employed experts to conduct tests such as psychiatric examinations, it seems as important for the government to be able to study the results reached by defense experts which are to be called by the defendant as it does for the defendant to study those of government experts." Fed. R. Crim. P. 16, 1974 Amendment advisory committee notes.

Critically in this case, the defendant's records are clinically essential to conduct an appropriate examination given the nature of the disorder he claims. Although the defendant's bare-bones expert disclosure provides little detail as to how Dr. Mariani purports to have evaluated Kim, it suggests that Dr. Mariani may have relied, for example, on historical treatment records in order to determine whether Kim "made repeated unsuccessful efforts to control, cut back, or stop gambling"; financial, casino, or online gambling records to determine whether the defendant gambles "with increasing amounts of money" or, "[a]fter losing money gambling, [] returns another day to get even"; or interviews with friends, family, or colleagues to assess whether Kim has previously lied "to conceal the extent of involvement with gambling," "jeopardized or lost a significant relationship, job, or educational/career opportunity," or received gifts or loans from others "to relieve desperate financial situations caused by gambling." (Dkt. 44 at Ex. A). Such information cannot be learned by a Government expert from an interview of the defendant alone, and the defendant's purported diagnosis cannot possibly be rebutted without equal access to the information upon which it is based. Although other mental conditions may be diagnosable solely upon the basis of particular diagnostic tests a clinician might administer, multiple experts with whom the Government have consulted have indicated that an appropriate evaluation of a patient exhibiting a gambling disorder may require reviewing, *e.g.*, the defendant's history of medication and psychiatric treatment; historical clinical doctor's and therapist's notes; records related to the existence and onset of other historically exhibited impulse control problems, pre-disposed conditions, or comorbidities; history of substance use; medical family history; personal financial records; and documents evidencing a patient's actual gambling conduct. If the Court were to wait to compel the production of "reports of any physical or mental examination" until the defendant actually "call[s] the witness who prepared the report" at trial, it would nullify the purpose of Rule 12.2, which "is to give the government time to prepare to meet the issue" of expert psychiatric evidence and avoid "a continuance in the middle of a trial." Fed. R. Crim. P. 16(b)(1)(B); Fed. R. Crim. P. 12, 1974 advisory committee notes. Without appropriate disclosure, the Government's psychiatric expert(s) would be all but certain to be forced to revise their own disclosure, or require

a supplemental examination of the defendant, or both, mid-trial—undermining the ability of both the Government and the defendant to properly present their cases-in-chief and conduct cross-examination.[6]

### 3. The Court Should Order the Defendant to Amend His Rule 16 Expert Disclosure

Finally, the Court should order the defendant to appropriately amend his deficient Rule 16 expert disclosure in advance of the examination. As described in the Government's motion to exclude the testimony of Dr. Mariani, the defendant's deficient disclosure frustrates the ability of the Court to conduct its gate-keeping function pursuant to Rules 702 and 703.[7] (Dkt. 44 at 21–22). But it also frustrates the ability of the Government to conduct an adequate Rule 12.2 rebuttal examination. To the extent that the Court concludes the defendant's medical records are not yet disclosable pursuant to Rule 16(b)(1)(B), their substance surely must be, pursuant to Rule 16(b)(1)(C), because the defendant's expert disclosure at a minimum must describe the "the bases and reasons" for Dr. Mariani's opinions. Fed. R. Crim. P. 16(b)(1)(C)(iii). Yet it is only from the defendant's legal briefing that the Government may guess at possible support for Dr. Mariani's diagnosis. That briefing claims that the defendant's father "gamble[d] away much of their family's financial security"; the defendant "witnessed his mother lose substantial sums of money through her attempts at day trading"; defendant "drain[ed] thousands of dollars in loans and savings" as a law student; prior colleagues "recommended that [the defendant] meet with a counselor to address his issues"; and that gambling "contributed to the [defendant's] divorce." (Dkt. 51 at 2–3). But Dr. Mariani's disclosure says nothing about any of those claims, and says nothing about the results of any specific tests he performed, if indeed he performed any. It reveals only that Dr. Mariani relied on unspecified "treatment records" to diagnose the defendant. (Dkt. 44 at Ex. A). With such deficient disclosure, the Government's rebuttal expert will have little ability to determine whether any of the self-professed and potentially self-serving statements made by the defendant in an interview contain any corroborating medical support whatsoever—let alone assess whether the defendant may be malingering in the evaluation. Because only a "general description of possible bases [for an opinion] does not meet the requirements of Rule 16(b)(1)(C)," the Court should order the defendant to supplement his Rule 16 disclosure, or else exclude the defendant's proposed expert testimony altogether. *United States v. Weiner*, No. 22 Cr. 19 (PGG), 2024 WL 82729, at *5 (S.D.N.Y. Jan. 8, 2024).

---

[6] The Government may also be constrained to subpoena the defendant's medical providers directly and request that the Court order pre-trial return dates before any examination of the defendant. *See* Fed. R. Crim. P. 17(c)(1). The Court should forestall unnecessary litigation related to such subpoenas and the full scope of the defendant's doctor- and psychotherapist-patient privilege waiver by ordering that the defendant simply comply with his Rule 16 obligations.

[7] Notably, even the defendant's earlier Rule 12.2 notice is deficient for failing to identify the particular tests the defendant's experts have performed. Although the notice "need not contain all of the detail and the opinions that would be in an expert report," it must at least "indicate 'the kinds of mental health experts the defense presently intends to call, and the specific tests those experts have performed.'" *United States v. Ray*, No. 20 Cr. 110 (LJL), 2021 WL 5493839, at *2 (S.D.N.Y. Nov. 22, 2021) (collecting cases).

## IV.  Conclusion

The defendant has now achieved an eight-month delay of trial by providing weeks-late notice of proposed expert evidence which is, in any event, plainly inadmissible under IDRA, Rules 401 and 403, and *Daubert*. Now, he asks to introduce such evidence—untimely and improper as it is, and so thinly disclosed as to be in near-total defiance of Rule 16—while seeking to frustrate the Government's ability to meet it. Because the defendant should not be permitted to continue to delay proceedings, and fundamental fairness requires that the Government be able to, at a minimum, call a thoroughly prepared rebuttal expert at trial, the Court should order the defendant to submit to a mental examination by the Government's expert(s), promptly produce clinically necessary Rule 16 material, and provide an amended Rule 16 expert disclosure.

Respectfully submitted,

JAY CLAYTON
United States Attorney

by: /s/  Ryan T. Nees
Michael DiBattista
Special Assistant United States Attorney
Ryan T. Nees
Assistant United States Attorney
(212) 637-1029 / -1595

Cc:    Kristoff Williams, Esq.
Tamara Giwa, Esq.